**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3760-20

IN THE MATTER OF THE
ESTATE OF DANIEL J.
RUSSOMANNO, Deceased.

_____

Argued June 8, 2022 – Decided July 22, 2022

Before Judges Gilson, Gooden Brown and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. 264016.

Christine Socha Czapek argued the cause for appellant Jerry Russomanno (Borteck & Czapek, PC, attorneys; Christine Socha Czapek, on the briefs).

James M. Nardelli argued the cause for respondent Diane Mavrakes (Parsons & Nardelli, attorneys; James M. Nardelli, on the brief).

PER CURIAM

This appeal arises out of a dispute between a sister and a brother concerning the estate of their deceased father. Defendant Jerry Russomanno appeals from an order granting summary judgment to plaintiff Diane Mavrakes.

In the summary judgment order, the court declared that Daniel J. Russomanno, the decedent, had died intestate, dismissed defendant's counterclaim seeking to admit an unsigned document as decedent's will, and appointed plaintiff as the administrator of decedent's estate. Because defendant has no evidence that the decedent reviewed the document he claims is the will or gave his final assent to that document as his will, we affirm the order granting summary judgment to plaintiff.

I.

We discern the facts from the summary-judgment record, viewing them in the light most favorable to defendant, the non-moving party. See Richter v. Oakland Bd. of Educ., 246 N.J. 507, 515 (2021). Daniel J. Russomanno died on January 5, 2019. He was survived by his two children: defendant, his son, and plaintiff, his daughter.

Before 2012, decedent was known to have had a will in which he divided his estate equally between his two children. No party has a copy of that will, and neither party contends that that will should be recognized.

On November 26, 2012, decedent, plaintiff, and defendant met with a lawyer, Grayson Heberley, III, to discuss having a new will prepared for decedent. At that meeting, the decedent told Heberley that he wanted his house

to go to defendant, plaintiff was to receive a specific bequest of $20,000, and the balance of his estate was to be distributed equally between his two children.

Several days after that meeting, Heberley sent decedent an engagement letter requesting a fee of $900 for the preparation of the will. As requested, decedent paid half of the fee up-front.

In January 2013, Heberley sent decedent several documents, including a draft of a proposed will. In the accompanying cover letter Heberley told decedent: "Once you have an opportunity to review all of the enclosed, please call me to discuss any questions or concerns you may have and to schedule an appointment to have these documents finalized and executed." It is undisputed that decedent did not respond to that letter, nor did anyone ever see decedent review or sign the will sent to him by Heberley.

Having received no response from decedent, Heberley wrote to decedent in February 2013 and December 2013. In the December letter, he told decedent: "[Y]our intentions are not officially recorded until we complete the documents. I invite you to call and schedule an appointment so that we might discuss any questions or concerns you might have." Decedent failed to respond to those letters, and Heberley closed his file.

A-3760-20

Defendant certified that sometime in early 2013, decedent handed him an envelope and stated that the envelope contained decedent's will. Defendant acknowledged that he never opened the envelope to review the document in it. Instead, he gave the envelope to his wife, who stored it in the basement of their home. The envelope and its contents were later presumed destroyed when defendant's basement was flooded.

On February 6, 2019, approximately a month after decedent's death, plaintiff filed a verified complaint asserting that decedent had died intestate and requesting letters of administration be issued to her. Defendant responded by filing an answer and counterclaim. In his counterclaim, defendant sought to have an unsigned copy of the will prepared by Heberley admitted as decedent's last will.

In November 2019, plaintiff moved for summary judgment. Defendant opposed that motion. Following oral argument, the trial court denied the motion on the record and memorialized the decision in an order dated March 9, 2020.

In May 2021, plaintiff filed a second motion for summary judgment. Defendant opposed that motion and submitted certifications in opposition. In defendant's certification, he stated that after his father had given him the envelope and had told him it contained his will, his father repeatedly told him

A-3760-20

that he would inherit the house. Defendant also submitted certifications from people who knew decedent prior to his death, and those individuals also certified that decedent had told them that his house would go to his son following his death. In addition, defendant certified that he believed his sister had a copy of the will that had been prepared by Heberley and that the copy had been signed by his father. In support of that position, defendant also submitted a certification from his son who stated that following decedent's funeral, he had seen plaintiff and her daughters go into the decedent's home and collect and leave with papers.

After hearing oral argument on the second summary-judgment motion, the motion judge granted summary judgment to plaintiff in an order filed on July 19, 2021. In that order, the judge declared decedent to have died intestate; dismissed defendant's counterclaim seeking to admit the unsigned will prepared by Heberley; and appointed plaintiff as administratrix of decedent's estate. The motion judge also issued a written statement of reasons explaining his decision. In short, the motion judge found that there was no evidence that decedent ever had signed the will prepared by Heberley, nor was there clear and convincing evidence that decedent had assented to that will. Defendant now appeals from the July 19, 2021 order.

A-3760-20

II.

On appeal, defendant argues that the motion judge erred in granting summary judgment to plaintiff because (1) there were genuine issues of material fact; (2) the court inappropriately made credibility findings; and (3) the court erred in concluding that there was no evidence that decedent gave final assent to the will prepared by Heberley. We are not persuaded by any of these arguments. Instead, we agree with the motion judge that defendant presented no evidence that would allow a factfinder to conclude that decedent had reviewed the will prepared by Heberley and thereafter had given his assent to it as his will.

Appellate courts review a grant of summary judgment "de novo and apply the same standard as the trial court." Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021). Summary judgment will be granted when "the competent evidential materials submitted by the parties," viewed in the light most favorable to the non-moving party, show there are no "genuine issues of material fact and . . . the moving party is entitled to summary judgment as a matter of law." Grande v. Saint Clare's Health Sys., 230 N.J. 1, 23-24 (2017) (quoting Bhagat v. Bhagat, 217 N.J. 22, 38 (2014)). Courts must give the non-moving party "the benefit of the most favorable evidence and most favorable inferences drawn from that

6

evidence." Est. of Narleski v. Gomes, 244 N.J. 199, 205 (2020) (quoting Gormley v. Wood-El, 218 N.J. 72, 86 (2014)). We owe no special deference to the motion judge's legal analysis. RSI Bank v. Providence Mut. Fire Ins. Co., 234 N.J. 459, 472 (2018).

Generally, to be recognized as a will, a document must be (1) in writing; (2) signed by the testator; and (3) signed by at least two individuals who witnessed the testator signing the will or to whom the testator acknowledged his or her signature. N.J.S.A. 3B:3-2(a). A document that fails to strictly comply with the provisions of N.J.S.A. 3B:3-2 can be admitted as a will if "the proponent of the document or writing establishes by clear and convincing evidence that the decedent intended the document or writing to constitute . . . the decedent's will." N.J.S.A. 3B:3-3; see also In re Estate of Ehrlich, 427 N.J. Super. 64, 70-71 (App. Div. 2012) (explaining that the policy behind N.J.S.A. 3B:3-3 is to avoid harsh results that may follow strict application of the formal requirements).

To establish that a decedent intended a document to serve as his or her will, a proponent of the document

> must prove, by clear and convincing evidence, that: (1) the decedent actually reviewed the document in question; and (2) thereafter gave his or her final assent to it. Absent either one of these two elements, a trier of

7

fact can only speculate as to whether the proposed writing accurately reflects the decedent's final testamentary wishes.

[In re Prob. of Will & Codicil of Macool, 416 N.J. Super. 298, 310 (App. Div. 2010).]

Our Supreme Court has explained that clear and convincing evidence

produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the factfinder to come to a clear conviction, without hesitancy, of the precise facts in issue.

[N.J. Div. of Youth & Fam. Servs. v. I.S., 202 N.J. 145, 168 (2010) (quoting In re Seaman, 133 N.J. 67, 74 (1993)).]

In that regard, clear and convincing evidence "is a higher standard of proof than proof by a preponderance of the evidence but a lower standard than proof beyond a reasonable doubt." Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 169 (2006).

Defendant submitted no evidence that could clearly and convincingly show that decedent reviewed the will prepared by Heberley and assented to it as his will. It is undisputed that there is no executed copy of the will prepared by Heberley. No witness alleged that decedent signed the will prepared by Heberley. Moreover, there is no witness who can testify that decedent told him or her that decedent intended the will prepared by Heberley to be his will.

8

Instead, defendant relies on evidence that decedent may have signed the will prepared by Heberley. In that regard, defendant certified that his father handed him an envelope in 2013 and told him that it contained his will. Critically, defendant acknowledges that he did not open that envelope and, therefore, he does not know whether it contained the will prepared by Heberley.

Defendant also relies on subsequent conversations with his father. In that regard, defendant certified that between 2013 and his death in 2019, decedent repeatedly told him that the house would be going to him. Although that testimony suggests decedent's general thoughts at a specific moment in time, it is not clear and convincing evidence that decedent had assented to the will prepared by Heberley.

Similarly, defendant has submitted certifications from several people who knew decedent. Those certifications all state that decedent expressed a similar intent to leave his home to his son. That testimony does not clearly and convincingly establish that decedent had assented to the will prepared by Heberley. Even if we accept that it was decedent's intent to leave his home to his son, there is no evidence that decedent had assented that his full intentions concerning his entire estate were accurately reflected in the draft will prepared by Heberley.

A-3760-20

Defendant's claims about his sister having a copy of a signed will also do not establish clear and convincing evidence that decedent assented to the Heberley will. At best, that evidence suggests that plaintiff and her daughters went to decedent's home after his death and took papers from the home. If we assume that plaintiff took papers, there is still no clear and convincing evidence that she took a signed copy of the will prepared by Heberley or that a signed copy of the Heberley will existed.

In short, we agree with the motion judge that viewing all the evidence in the light most favorable to defendant, no rational factfinder could be clearly convinced that decedent reviewed and assented to the will prepared by Heberley. Accordingly, the motion judge correctly concluded that plaintiff was entitled to summary judgment declaring that decedent had died intestate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3760-20